# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| MARJORIE ANNE SAWYER,<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | Case No.: 1:16-cv-00275-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Marjorie A. Sawyer's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claims for disability insurance benefits and supplemental security income.[2] *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. <u>ADMINISTRATIVE PROCEEDINGS</u>

On September 10, 2012, Marjorie A. Sawyer ("Petitioner") protectively applied for Title II disability and disability insurance benefits, as well as for Title XVI supplemental security income. (AR 13.) Petitioner alleged disability beginning September 24, 2010. *Id.* Her claims

---

[1] The pleading was titled and framed as a complaint, but is more properly treated as a petition for review, as it seeks review of a final agency action. It will be referred to herein as a petition for review.

[2] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER – 1**

were denied initially on February 7, 2013 and then again on reconsideration on April 23, 2013. *Id.* On May 14, 2013, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). *Id.* On September 4, 2014, ALJ Jo Hoenninger held a hearing in Kennewick, Washington during which Petitioner, represented by attorney Cory J. Brandt,[3] appeared and testified. *Id.* Impartial vocational expert Daniel R. Mckinney, Sr. also appeared and testified at the hearing by telephone. *Id.*

On October 17, 2014, the ALJ issued a Decision denying Petitioner's claim, concluding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 22.) Petitioner timely requested review from the Appeals Council on or about October 24, 2014. (AR 9.) On April 27, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he conclusions and findings of fact of the [respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 1 (Dkt. 1). All of Petitioner's assignments of error relate to alleged deficiencies in how the ALJ considered, or failed to consider, the severity of Petitioner's hearing loss. *See generally* Pet'r's Br. (Dkt. 17). Petitioner asks the Court to reverse the ALJ's decision or to remand for the SSA to hold a supplemental hearing. *Id.* at 17.

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are

---

[3] Petitioner is represented in this petition by different counsel.

**MEMORANDUM DECISION AND ORDER – 2**

conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent

with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since September 24, 2010, the alleged onset date. (AR 15.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an

individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "mild cervical degenerative disc disease, left hear [sic] hearing loss, and Crohn's disease." (AR 15.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 16.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she

**MEMORANDUM DECISION AND ORDER – 5**

performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC:

> To perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the capacity to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand and walk 6 of 8 workday hours, and sit 6 of 8 workday hours. The claimant is limited to frequent climbing of ramps and stairs, and occasional climbing of ladders, ropes and scaffolds. The claimant is limited to occasional crawling and frequent balancing, stooping, kneeling and crouching. The claimant is limited to occasional overhead lifting with the non-dominant left upper extremity, and limited to frequent handling with the non-dominant left upper extremity. The claimant should not be exposed to loud industrial noise, and should avoid concentrated exposure to vibration and hazards, such as unprotected heights and exposed moving mechanical parts. The claimant can occasionally use a telephone. The claimant needs close access to a restroom and additionally needs a five minute break every hour in lieu of regular breaks.

(AR 16.) She further found that Petitioner is able to perform her past relevant work as a cashier, café manager, and bartender/waitress. (AR 20.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his or her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, because the ALJ found that Petitioner is able to perform her past relevant work as a cashier, café manager, and bartender/waitress, the ALJ did not need to consider whether there are other jobs that exist in significant numbers in the national economy that Petitioner can perform.

**MEMORANDUM DECISION AND ORDER – 6**

Nonetheless, the ALJ did undertake this consideration, finding that "[a]lthough the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." (AR 21.) The ALJ specifically found that Petitioner "would be able to perform the requirements of representative occupations such as: . . . Small Product Assembler II . . . [and] Garment Sorter." (AR 21–22.) Based on the finding that Petitioner could engage in past relevant work, the ALJ ultimately concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from September 24, 2010, through the date of this decision." (AR 22.)

**B.     Analysis**

Petitioner argues the ALJ's decision denying benefits is not supported by substantial evidence and is contrary to law and regulation. Pet. for Review 1 (Dkt. 1). In broad terms, Petitioner asserts that "the ALJ failed to understand the objective medical evidence of record with regard to the Petitioner's bilateral hearing loss. This misunderstanding resulted in several reversible errors." Pet'r's Br. 4 (Dkt. 17). Petitioner's entire argument is focused on the extent and significance of her hearing loss. She does not dispute any other portion of the ALJ decision.

Petitioner's arguments that the ALJ erred are closely related. First, she argues the ALJ failed to evaluate the severity of her hearing loss under the proper regulation. *Id.* at 5–7. Next, she argues the ALJ failed to recognize that her ability to discriminate speech is highly impaired. *Id.* at 7–8. Following that, she asserts the ALJ failed to recognize she suffers from bilateral hearing loss. *Id.* at 8–10. Next, she contends the ALJ erred by failing to find that her hearing is not improved by using a hearing aid. *Id.* at 10–11. Additionally, she argues that her hearing loss may medically equal the standard to prove disability based on hearing loss. *Id.* at 11–15. Finally,

she argues the ALJ erred in giving great weight to the opinion of a reviewing physician. *Id.* at 15–16.

Respondent addresses Petitioner's individual arguments, and also notes, correctly, that "Petitioner has not challenged the ALJ's overall adverse credibility determination." Respt's' Br. 5 (Dkt. 21). Respondent further notes, again correctly, that the ALJ stated, "the record contains no opinion from a treating physician indicating the claimant is disabled or even has limitations greater than those determined in this decision." *Id.* (quoting AR 18). From this, Respondent contends Petitioner cannot meet her burden to show harmful error, regardless of her arguments on appeal, due to the lack of any opinion evidence in the record indicating Petitioner is disabled. *Id.*

The Court disagrees. Petitioner contends that she may meet or medically equal the listed impairment for hearing loss and is therefore disabled. Pet'r's Br. 11–15 (Dkt. 17). The lack of opinion evidence supporting Petitioner's claim of disability does present a significant challenge to her case on appeal. Nonetheless, it is conceivable that Petitioner could make the necessary showing even without opinion evidence. Therefore, the Court declines to affirm the ALJ's decision based solely on the lack of opinion evidence. Instead, the Court will address each of Petitioner's arguments in turn below.

    1.    <u>The ALJ Did Not Err in Evaluating Whether the Severity of Petitioner's Hearing Loss Meets or Medically Equals a Listed Impairment.</u>

Petitioner asserts that "[t]he ALJ noted . . . that the petitioner's hearing loss did not meet or equal the listing under Appendix 1, section 2.08."[4] Pet'r's Br. 5 (Dkt. 17). She faults the ALJ

---

    [4] Petitioner implies that the ALJ expressly referenced Appendix 1, section 2.08. The ALJ did not do so. Rather, the ALJ "considered the pertinent sections found within 20 CFR Part 404, Subpart P, Appendix 1 of the Listings, placing special attention upon Sections 1.00, 2.00 and

for not discussing specific listings in detail before concluding Petitioner failed to meet or equal any listings. *Id.* at 5. More specifically, Petitioner argues the ALJ was required to discuss whether she met or equaled the listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 2.08, addressing hearing impairments where hearing is not restorable by a hearing aid. *Id.* Further, Petitioner argues that the record was not sufficiently complete for the ALJ to undertake a proper evaluation under that section, so the case must be remanded for further development. *Id.* at 5–6.

Respondent points out that Section 2.08 did not exist when the ALJ issued her decision in October 2014. There was a Section 2.08 in a prior version of the regulations but it was removed in 2010 at which time its substantive contents were modified and renumbered as Section 2.10. *See* Revised Medical Criteria for Evaluating Hearing Loss, 75 Fed. Reg. 30,693 (June 2, 2010). Nonetheless, as relevant here Section 2.10 is similar to former Section 2.08. Paragraph (A) of Section 2.10 establishes thresholds for severe hearing impairment based on average conduction hearing in air or bone. Paragraph (B) provides that a person is severely impaired if there is medical evidence of "[a] word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (see 2.00B2e)." Section 2.00(B)(2)(e) provides:

> Word recognition testing determines your ability to recognize a standardized list of phonetically balanced monosyllabic words in the absence of any visual cues. This testing must be performed in quiet. The list may be recorded or presented live, but in either case the words should be presented at a level of amplification that will measure your maximum ability to discriminate words, usually 35 to 40 dB above your SRT. However, the amplification level used in the testing must be medically appropriate, and you must be able to tolerate it. If you cannot be tested at 35 to 40

---

5.00." (AR 16.) The ALJ then stated, "[d]espite the claimant's impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." *Id.*

**MEMORANDUM DECISION AND ORDER – 9**

dB above your SRT, the person who performs the test should report your word recognition testing score at your highest comfortable level of amplification.

"Word recognition testing" is also referred to as "speech discrimination," which is the phrase previously used in Section 2.08 and which Petitioner uses extensively. 20 C.F.R. § 404, Subpart P, Appendix 1, § 102.00(B)(2)(f).

Here, Petitioner's reliance on Section 2.08 is of no substance because that section was removed in 2010. The Court will consider Petitioner's arguments as made with respect to Section 2.10 instead of 2.08; however, even with that understanding the arguments have no merit. Petitioner underwent various hearing tests on December 28, 2012. (AR 295–299.) She was evaluated to have speech discrimination of 100% at 75 decibels. *Id.* at 298, 299. Thus, there is medical evidence in the record that Petitioner's word recognition score was far higher than the 40% threshold contained in Section 2.10(B). Whether or not these test results indicate, or do not indicate, a severe impairment under Section 2.10(A) is an unaddressed question in terms of any opinion evidence, and the Court will not interpret the data on its own. (AR 298.) Here, it is the Petitioner's burden to show that the evidence of record necessitated a more detailed analysis under Section 2.10, and she has not met that burden.

Petitioner asserts that the medical record at issue includes raw test data that is not translated into a form allowing it to be analyzed under Section 2.10. Pet'r's Br. 6–7. But Petitioner cites no medical opinion or evidence supporting her assertion that this "raw data" is unfit for evaluation under Section 2.10. Such an assertion is not sensible, as the test results appear straightforward and by their plain language include a "speech discrimination" score given as a percentage. Even if there was an issue with the form of the data, it was nonetheless the Petitioner's burden in the first instance to ensure the record included the evidence necessary to establish that she is disabled. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the

Petitioner did not introduce medical records or expert opinions demonstrating that she met or equaled the official listing for hearing impairments, the deficiency is with her claim and not with the ALJ's analysis of it. This Court finds the ALJ did not err by failing to discuss any particular listings, including Sections 2.08 or 2.10.

      2.      <u>Petitioner Has Not Shown Her Ability to Discriminate Speech Is Highly Impaired.</u>

Petitioner's next argument is that her "ability to discriminate speech is highly impaired." Pet'r's Br. 7 (Dkt. 17). She asserts that her hearing did not improve with a hearing aid, but she fails to cite record evidence for this proposition. *Id.* at 7–8. Nor is it clear she made this argument before the ALJ, as the hearing transcript is silent on this issue and Petitioner has cited no evidence that a hearing aid did not improve her hearing. Petitioner suggests that she "clearly does not have the ability to discriminate speech without a hearing aid when she can only hear speech at 100% when it is projected at 75 decibels with her one usable ear in a soundproof booth while wearing headphones." *Id.* at 8. She cites no evidence or medical opinion that interprets or contextualizes the significance of these results.

Further, Petitioner's arguments are not supported by the record. The ALJ cited Petitioner's medical records when finding that Petitioner's "hearing is predicted to improve with use of only a hearing aid." (AR 19.) The ALJ further found that Petitioner's ability to discriminate speech was not impaired even without the use of a hearing aid. *Id.* The medical records on which the ALJ relied also indicate Petitioner "[h]ears ok in right ear" and that she has "[m]ild to moderate right [ear sensorineural hearing loss]" and "gradual [hearing] loss in the right ear." (AR 296, 297.) Moreover, the provider "[h]ighly recommend[ed] [a] hearing aid for the right ear" and also noted that Petitioner "[m]ay benefit from cochlear implant in the future if her hearing continues to decline in the right ear." (AR 297.)

**MEMORANDUM DECISION AND ORDER – 11**

The medical records describing the extent of Petitioner's right-ear hearing loss (which the Court acknowledges are disputed by Petitioner herself but which are undisputed by other medical records or medical opinions) constitute substantial evidence supporting the ALJ's finding. Petitioner's present assertion to the contrary that her ability to discriminate speech is highly impaired is not supported by the record. Absent medical evidence or a medical opinion in the record supporting her assertion that 100% speech discrimination at 75 decibels is a severe limitation, there is simply no basis upon which the ALJ's decision on this issue could properly be overturned.

3. <u>The ALJ Did Not Err in Failing to Recognize Petitioner Suffers From Bilateral Hearing Loss.</u>

Next, Petitioner argues that "[t]he ALJ failed to recognize the petitioner has bilateral hearing loss." Pet'r's Br. 8 (Dkt. 17). She asserts that the combination of total hearing loss in her left ear and partial but worsening hearing loss in her right ear results in significant overall bilateral hearing loss. *Id.* at 8–10. From this, she contends the ALJ's determination of her residual functional capacity was erroneous because it did not account for the extent of hearing loss in her right ear. *Id.* She argues "[t]he ALJ in this case completely missed the severity of the loss in the Petitioner's right ear, and in combination with the total loss in the left." *Id.* at 9. She also faults the ALJ for "fail[ing] to incorporate any [Medical Expert] testimony as to limitations created by this type of bilateral hearing loss." *Id.* Petitioner does not cite any record evidence of medical records or opinions supporting her position, nor does she cite any case law supporting her argument.

The ALJ found that Petitioner's left ear hearing loss is a severe impairment, but she did not find a severe impairment in Petitioner's right ear hearing or in bilateral hearing. (AR 15.) Nor did she find that a combination of Petitioner's impairments, including hearing-related

**MEMORANDUM DECISION AND ORDER – 12**

impairments, meets or medically equals the severity of a listed impairment. (AR 16.) The ALJ properly considered the extent of Petitioner's hearing loss, including in each ear separately and in both ears together. The record includes references that Petitioner "[h]ears ok in right ear" and that she has "mild to moderate" hearing loss in her right ear. (AR 296, 297.) This evidence supports the ALJ's finding that Petitioner does not suffer from a severe impairment based on either right-ear hearing loss or bilateral hearing loss. Absent record evidence showing the medical significance of total hearing loss in one ear and mild to moderate hearing loss in the other, the Court cannot assume the ALJ erred by failing to regard Petitioner's right ear hearing loss as more significant or severe.

Petitioner's own testimony supports the ALJ's findings. When asked to identify her physical problems, Petitioner failed to mention any hearing issues. (AR 59.) Even if that was an oversight on her part, when she was later asked directly about her hearing, she responded "I am completely deaf in my left ear, so I can't hear anything out of it. *I can hear out of my right.* It's starting to go. I read lips more. And I have to concentrate." (AR 67 (emphasis added).) In light of the substantial evidence regarding the minimal extent of Petitioner's right-ear hearing loss, the ALJ did not err by declining to seek input from a medical expert. Finally, the ALJ's determination of Petitioner's residual functional capacity acknowledged that, due to her hearing issues, she could only "occasionally use a telephone." (AR 16.) Because Petitioner is completely deaf in her left ear, the ALJ's recognition of a limitation on telephone use necessarily means she was aware of limitations with Petitioner's right-ear hearing.

Plaintiff's argument contains an understandable, from her perspective, disagreement with the ALJ's conclusions on this subject, but there is substantial evidence on which the ALJ relied when considering Petitioner's hearing loss. Therefore, in light of the competent record evidence,

undisputed by any medical source, the ALJ did not err in her findings related to the extent or significance of Petitioner's hearing loss in either or both ears.

    4.    <u>The ALJ Did Not Err in Failing to Make a Finding Regarding Whether a Hearing Aid Would Improve Petitioner's Hearing.</u>

Petitioner faults the ALJ for failing to provide specific rationale for rejecting Petitioner's testimony that a hearing aid did not help her hear better. Pet'r's Br. 10–11 (Dkt. 17). Petitioner suggests that under Social Security Ruling (SSR) 16-3p the ALJ could not reject her testimony without providing some analysis of that issue. *Id.* She also suggests that the record lacks any evidence her hearing would have improved with a hearing aid. *Id.* at 10. Finally, she further suggests that "the record remains that she did not obtain improvement" because the ALJ did not dispute Petitioner's claim to that effect. *Id.*

As an initial matter, this issue is not relevant to Petitioner's request for relief in this Court. Even if she were able to prove her hearing is not improved by a hearing aid, that fact would not undermine the ALJ's findings, supported by substantial evidence, that her right-ear hearing loss is not a severe limitation. The ALJ found that "[Petitioner's] hearing is predicted to improve with use of only a hearing aid, but otherwise the claimant's ability to discriminate speech was not impaired *even without the benefit of a hearing aide* [sic]." (AR 19 (emphasis added).) Whether a hearing aid improves her hearing is irrelevant in light of the ALJ's finding that even without a hearing aid she is still not impaired.

Moreover, SSR 16-3p addresses "evaluation of *symptoms* in disability claims." SSR 16-3p at 1 (emphasis added). Per the SSR, a "symptom" is "the individual's own description or statement of his or her physical or mental impairment(s)." *Id.* at 2. In suggesting that the ALJ erred under SSR 16-3p by failing to address the impact of a hearing aid on Petitioner, she argues by implication that whether a hearing aid improves her hearing is a "symptom." But this is

inaccurate. The "symptom" at issue is Petitioner's hearing loss. As discussed above, the ALJ did provide specific rationale for her finding that Petitioner does not suffer from right-ear hearing loss. The ALJ quoted Petitioner's audiology records that indicated Petitioner "[h]ears ok in right ear" and that classified her right-ear hearing loss as "[m]ild to moderate." (AR 19, 296, 297.) SSR 16-3p has no application to Petitioner's argument.

Separately, Petitioner presumes too much when asserting that the ALJ is bound by Petitioner's "statement that her hearing had not been improved in the past by use of a hearing aid in the right ear." Pet'r's Br. 10 (Dkt. 17). First, the record discloses no such statement. Petitioner cites to the same medical record that has already been cited extensively herein. *Id.* The first page of that record includes a statement by the medical provider that Petitioner "has worn a hearing aid in the right ear in the past but noted it was distracting." (AR 295.) Nothing else on that page, or on any other page of the record the Court reviewed, discusses Petitioner's prior use of a hearing aid. The statement on page 295 does not indicate that the hearing aid did not improve her hearing; it merely "noted it was distracting." *Id.* The Court will not read into this statement that the hearing aid failed to improve her hearing, especially in light of other statements made in the same record, *e.g.*, "Highly recommend hearing aid for the right ear," and "would benefit from a hearing aid on the right side." (AR 297, 299.) Common sense suggests that the medical provider[5] would not have recommended a hearing aid if Petitioner had credibly claimed a prior hearing aid was unhelpful. Of course, a hearing aid could be "distracting," as noted in the medical record, but nonetheless could still improve hearing.

---

[5] It is not clear from this record, pp. 295–299, whether the statements were all made by a single provider or were instead made by two providers. But this fact does not change the analysis.

**MEMORANDUM DECISION AND ORDER – 15**

Second, an ALJ need not "dispute" any statements made by a claimant, and she neither commits error nor adopts a claimant's statement by not disputing it. The "[Social Security] [A]gency operates essentially, and is intended so to do, as an adjudicator and not as an advocate or adversary." *Richardson v. Perales*, 402 U.S. 389, 403 (1971). Nor is it clear that whether Petitioner's hearing would improve with a hearing aid was an issue squarely before the ALJ here. It was not brought up during the hearing. It was of only limited significance in the ALJ's written decision. For these reasons, Petitioner's argument fails to justify overturning the ALJ's decision.

5. <u>Petitioner Has Not Shown Her Hearing Loss May Medically Equal the Hearing Loss Listing.</u>

Petitioner next argues her hearing loss may suffice to establish disability based on the listing for hearing loss. Pet'r's Br. 11–15 (Dkt. 17). She repeats her earlier arguments (1) that the record is incomplete because the audiology records are raw data rather than refined scores; (2) that her hearing is not restorable by a hearing aid; and (3) that the ALJ erred by failing to consider her right-ear hearing loss when determining her residual functional capacity. *Id.* at 14. There is no citation to any medical opinion in the record that supports her position. As discussed above, none of these arguments has merit. The ALJ's decision was supported by substantial evidence and none of Petitioner's arguments in this section undermines the sufficiency of that decision in any way.

6. <u>Petitioner Has Not Shown the ALJ Erred in Giving Great Weight to Dr. Bernardez-Fu's Opinion.</u>

Petitioner takes issue with the ALJ having given great weight to the opinion of consulting physician Dr. Robert Bernardez-Fu, M.D.[6] Pet'r's Br. 15–16. Petitioner asserts Dr. Bernardez-Fu

---

[6] The ALJ referred to this consulting physician as Dr. "Bernarder-Fu" but his name is properly spelled "Bernardez-Fu." (AR 135, 136.) This opinion uses the correct spelling of his name.

**MEMORANDUM DECISION AND ORDER – 16**

offered a "mistaken opinion" when stating Petitioner had "100% right ear speech discrimination." *Id.* at 15 (quoting AR 20). Petitioner challenges the accuracy of this statement, asserting that "[b]ecause the Petitioner has at least 'mild to moderate' hearing loss in the right ear, she cannot obviously have '100% right ear speech discrimination.'" *Id.* at 16. However, Petitioner's contention is this regard is not supported by any reference to a medical opinion in the record.

As discussed previously, the medical records in this case clearly show 100% right-ear speech discrimination at 75 decibels. (AR 298, 299.)[7] Absent an opinion from a medical source to the contrary, the Court cannot assume that "mild to moderate hearing loss" is mutually inconsistent with "100% speech discrimination." The administrative record discloses neither medical records nor any medical opinion that supports an effective challenge on that basis. Without such, Petitioner cannot prevail on this issue.

## IV. <u>CONCLUSION</u>

Petitioner has not shown that the ALJ erred in failing to find that Petitioner's right-ear hearing loss constituted a severe impairment or that such hearing loss needed to be included in the ALJ's determination of her residual functional capacity. The ALJ's decision was supported by substantial evidence and Petitioner's arguments do not call into question the sufficiency of that evidence. Accordingly, the ALJ's decision is affirmed.

---

[7] Dr. Bernardez-Fu opined that Petitioner "has 100% speech discrimination in the right ear at 45 dBHz." (AR 134.) There is thus a discrepancy in the decibel level at which Petitioner has 100% speech discrimination, given that the medical records Dr. Bernardez-Fu reviewed indicate 75 rather than 45 decibels. (AR 298, 299.) Nonetheless, neither the ALJ nor Petitioner referred to the decibel level Dr. Bernardez-Fu stated. Petitioner challenges only Dr. Bernardez-Fu's opinion of "100% speech discrimination," which does not implicate the discrepancy with the decibel level. That discrepancy is therefore not material and it will not be further discussed.

**MEMORANDUM DECISION AND ORDER – 17**

# V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED: December 27, 2017

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge